IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LANDREE WAUFORD,

        Plaintiff ,

vs.                                                  CIVIL NO. 10-1158 LFG/GBW

BILL RICHARDSON, Governor
of the State of New Mexico; KEN
ORTIZ, Director of Motor Vehicle
Division; and MICHAEL SANDOVAL,
Director of Motor Vehicle Division,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff, Landree Wauford ("Wauford") brings a civil rights action seeking substantial damages against New Mexico's former Governor Bill Richardson, and a former Director of the Motor Vehicle Division, Ken Ortiz, and current Motor Vehicle Division Director, Michael Sandoval.

Wauford's lawsuit relates to the enforcement of obligations imposed by the Nonresident Violator Compact, N.M.S.A. 1978, §§ 66-8-137.1 to 137.2 (1981) ("Compact"). Defendants filed a motion to dismiss, setting forth four separate grounds why Wauford's complaint should be dismissed. The motion is fully briefed [Doc. 9, 13, 19.] Oral argument is not necessary.

### Background[1]

Wauford was a licensed motor vehicle driver in the State of New Mexico [Doc. 2, Ex. G]. Wauford's driver's license was issued by the New Mexico Motor Vehicle Division ("MVD") on January 12, 2005, and would expire on April 10, 2009 [Doc. 2, Ex. A, G].

---

[1] The information concerning the lawsuit's background is taken from the pleadings and exhibits.

Briefly stated, Wauford driving a motor vehicle in Eaton, Ohio on June 10, 2008, when he was cited by a law enforcement officer for following too close. [Doc. 2, Ex. H.] Wauford was not arrested or taken before a municipal judge. The law enforcement officer did not seek collateral or a bond. Rather, Wauford was given an option to appear in municipal court to contest his citation or, alternatively, to pay the fine.[2]

Wauford signed the citation and noted, "Forced to sign by officer." Wauford now claims that his signature was the product of "extortion" and of the wrongful conduct of the Eaton law enforcement officer who "threatened to murder" Wauford. [Doc. 2, Ex. C].

Wauford did not pay the fine or appear in the Eaton Municipal Court to challenge the propriety of the citation or the conduct of the issuing officer. On June 23, 2008, the Clerk of the Eaton Municipal Court corresponded with Wauford who was then back in his home state–New Mexico. Wauford was warned that failure to pay the fine in 21 days from June 23, 2008, would result in Ohio MVD informing New Mexico MVD of his lack of compliance, which would result in Wauford's license being suspended until he responded or paid the fine in full. Doc. 2, Ex. E].

Wauford persisted in his refusal to resolve the pending citation in Eaton, Ohio or to pay the fine. Eight months later, just prior to the scheduled expiration date on Wauford's driver's license in New Mexico, Wauford sought to renew his license. He was advised that he could not renew it as a result of his failure to resolve the Ohio ticket.[3] Wauford contends he was told by a clerk of the

---

[2] The penalty amount on the citation is difficult to read. It appears to be $111.34. However, a subsequent Compact violation notice from the Eaton Municipal Court indicates that the original amount was $110 [Doc. 2, Ex. E].

[3] It is unclear if, prior to the expiration of the date on his license, Wauford's license was suspended. A New Mexico Motor Vehicle driving abstract [Doc. 2, Ex. A], dated March 9, 2009, approximately one month prior to the scheduled expiration, shows that the current status of his license had no revocations, no suspensions, no denials, and no cancellations. There was an indication of one "administrative action."

New Mexico MVD that he could not renew his license because it was suspended. As a result of his inability to renew his license, Wauford brought this civil rights complaint under 42 U.S.C. § 1983 against Governor Richardson and two MVD Directors, Ortiz and Sandoval.

## Nonresident Violator Compact

Forty-five states have entered into mutual agreements and compacts with one another. The intent of such compacts was to ease the burden on out-of-state motorists, facilitate the administration of each state's traffic laws, aid in the enforcement of traffic citations, and provide an enforcement mechanism to ensure that motorists, who were released on their recognizance with a promise to either appear in court or to pay the fine, followed through with their promise. *See, e.g.*, § 66-8-137.1 (Article I, Declaration of Policy and Purpose).

The Compact contemplates that when an out-of-state motorist is stopped for most traffic offenses, the motorist will sign a citation agreeing to appear at a later date in an appropriate court to enter a plea or, alternatively, agreeing to pay the amount of the citation.

## Present Complaint

Wauford's Complaint [Doc. 1, n. 1] alleges that the Defendants are being sued "in their official and unofficial capacity." He alleges that Governor Richardson and Defendant Ortiz, acting under color of state law, violated his rights. He also asserts:

> The Nonresident Violator Compact is merely a contract between parties. The Compact states that the terms of the contract must be written on the citation. Plaintiff did not enter into that contract. Defendant(s) Richardson and Ortiz secured Plaintiff's signature to that contract without Plaintiff's consent. Mr. Ortiz left the position and Michael Sandoval took over and continued to up hold the same violations as well as created his own violations against Plaintiff.

[Doc. 1, p. 2.] Wauford concludes that his rights, privileges and immunities were violated, and that the following facts form the basis of his allegations:

> Plaintiff's First amendment right (right to petition for grievance) was violated by Defendant(s), Plaintiff's Fourteenth amendment right (procedural due process) was violated by Defendant(s), Plaintiff's privilege of motor vehicle license was suspended without due process, Plaintiff's personal property (his signature) was secured by Defendant(s) and used to obligate Plaintiff to contractual obligations without due process. Defendant(s) used extortion as a tool to violate Plaintiff's Constitutional rights pursuant to First and Fourteenth amendment.

[Doc. 1, p. 3, ¶ C(1)].

No other information is present indicating what each individual is alleged to have done and how the individual's acts caused a violation Wauford's rights. No further detail is provided concerning any particular acts allegedly taken by the named Defendants.

## **Defendants' Motion to Dismiss**

On January 10, 2011, Defendants filed a Motion to Dismiss raising four distinct arguments: (1) Wauford's official capacity claims against the Governor and the MVD Directors are barred by Eleventh Amendment in that New Mexico has not consented to be sued in federal court; (2) Wauford "cannot show an injury in fact," and, therefore, lacks standing to bring any procedural due process claims; (3) Wauford fails to state a claim under Fed. R. Civ. P. 12(b)(6) and fails to meet the pleading requirements set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ("Twombly"), and Ashcroft v. Iqbal, __ U.S. __ 129 S. Ct. 1937 (2009) ("Iqbal"); and (4) Defendants are entitled to qualified immunity.

**Analysis**

**I.      Eleventh Amendment Immunity/Sovereign Immunity**

"The Eleventh Amendment, and the concept of sovereign immunity it embodies, bars suits against states absent an express and unambiguous waiver or abrogation by Congress." Wood v. Milyard, 2011 WL 103029, *1 (10th Cir. Jan. 13, 2011) (unpublished) (*citing* Edelman v. Jordan, 415 U.S. 651, 662-63 (1974)). Eleventh Amendment sovereign immunity bars claims against state defendants, such as these, unless the state has waived that immunity. Edelman, 415 U.S. at 662-63, *overruled on other grounds,* Will v. Michigan, 491 U.S. 58 (1989).

In the present case, Wauford seeks to bring claims against the Governor and two other state officials for monetary damages. Even though Wauford does not expressly name the State as a defendant, he set forth claims against state officials in their official capacity. "It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." Edelman, 415 U.S. at 663. *See* Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 464 (1945) (overruled on other grounds) ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."). A rule has evolved that when private parties file lawsuits seeking to impose a liability which must be paid from public funds in the state treasury, such suit is barred by the Eleventh Amendment. Edelman, 415 U.S. at 663 (citation omitted).

In other words, lawsuits brought against individuals in an official capacity are suits against the state and are barred by the Eleventh Amendment. Will v. Michigan, 491 U.S. 58, 66 (1989). In Will, the Supreme Court explained:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity.

Wauford does not argue that New Mexico has waived its immunity to suit, and Defendants assert that there is no waiver. Because Wauford brings claims for money damages against state officials, the official capacity claims are barred by the State's Eleventh Amendment immunity.

Moreover, any claim brought pursuant to 42 U.S.C. § 1983 must be brought against a "person" acting under color of state law. Will, 491 U.S. at 71. Although state officials literally are "persons," a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Id. (citation omitted).

For the foregoing reasons's Wauford's official capacity claims against state officials are dismissed with prejudice.

## II.     Fed. R. Civ. P. 12(b)(6)

The United States Supreme Court's decisions in Twombly and Iqbal significantly changed civil pleading requirements. It is no longer sufficient to plead conclusions, and the Court is no longer required to accept as true the allegations of a complaint. While the current pleading requirements in a post-Twombly-Iqbal world do not require "detailed factual allegations," Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." Iqbal, 129 S.Ct. at 1949.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

> inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Id. (citations omitted).

Wauford's allegations against the Defendants fail to meet pleading requirements set forth in Twombly and Iqbal. Indeed, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." Twombly, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citations omitted).

The wrongful conduct alleged by Wauford consists of nothing but conclusory allegations of constitutional violations. There is no indication of who allegedly did what and no showing of actual hands-on-conduct committed with the requisite intent of violating Wauford's constitutional rights, or in reckless disregard of those rights. *See, e.g.*, County of Sacramento v. Lewis, 523 U.S. 833, 854 (1998) (finding that there must be evidence that the officers intended to harm the suspects physically or to worsen their legal plight).

Here, Wauford asserted no conduct by any of the Defendants, save for statements that Defendants "procured his signature" in Ohio by extortion, and that Defendants denied him a hearing in New Mexico.

It strains credulity to believe that the Governor of the State of New Mexico or his prior or present MVD Directors somehow compelled Wauford, apparently at the roadside, to sign his promise to appear on the citation under a threat of death, or that Defendants personally intervened

to deny him a hearing. No other allegations appear in the Complaint other than conclusory assertions that Defendants violated constitutional rights.

It appears that Wauford named these Defendants in this lawsuit merely because they are in the chain of command of the actual individuals who allegedly declined to renew Wauford's license, possibly suspended it, or declined to set a hearing in New Mexico. Iqbal again resolves any questions as to whether government officials may be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. "It is undisputed that supervisory Bivens [§ 1983] liability cannot be established solely on a theory of *respondeat superior*." Iqbal, 129 S.Ct. at 1948 (*citing* Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 691 (1978))

This is not new law. In Robertson v. Sichel, 127 U.S. 507, 515-16 (1888), the high court held:

> A public officer or agent is not responsible for the misfeasance or positions wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the sub agents or servants or other persons properly employed by or under him, in the discharge of his official duties.

Iqbal makes clear that in Bivens or § 1983 suits, a plaintiff must plead that each government official defendant, through the official's own individual actions, violated the Constitution. In this case, Wauford's claims are unavailing. Indeed, Iqbal may well have sounded the death knell for supervisory liability claims. That is exactly what the dissent stated.

> The majority says that in a Bivens action, "where masters do not answer for the torts of their servants" "the term 'supervisory liability' is a misnomer," and that "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Lest there be any mistake, in these words, the majority is not narrowing the scope of supervisory liability; it is eliminating Bivens [§ 1983] supervisory liability entirely.

Iqbal, 129 S.Ct. at 1957 (dissenting) (citations omitted).

The Court concludes that Wauford's Complaint fails to meet the minimum pleading requirements of Twombly and Iqbal. Sufficient facts are not pled to demonstrate what each Defendant allegedly did and how that Defendant's actions allegedly violated Wauford's constitutional rights. Moreover, to the extent that the claims against the governor and past and present MVD Directors are supervisory liability claims, they are not actionable under Monell and Iqbal.

### III.  Standing

To the extent Wauford may seek to amend his pleadings to comport with pleading requirements, he faces another insurmountable burden. In 2007, the Tenth Circuit decided a case involving similar claims, Denny v. Richardson, 234 F. App'x 862, 864 (10th Cir. May 18, 2007) (unpublished).[4] In Denny, the New Mexico MVD refused to renew plaintiff's New Mexico driver's license because it received notice that she had not paid various fines and fees associated with a traffic stop in Arizona. As Arizona was a signatory to the Nonresident Violator Compact, it notified the MVD in New Mexico of Denny's non-compliance, and New Mexico declined to renew her license. Denny thereafter sued two of the same defendant in this case, Governor Richardson and Ken Ortiz, along with the MVD and the State of New Mexico alleging, *inter alia*, the same procedural due process violations raised by Wauford.

---

[4] While the Denny case is unpublished, Wauford's asssertion that Defendants are relying on an unpublished opinion is weakened by the fact that Wauford himself first cited Denny in his Brief in Support of Complaint. [*See, e.g.*, Doc. 2, pp. 1, 6]. Additionally, while an unpublished opinion is not binding, the Circuit's analysis is persuasive.

In Denny, the Tenth Circuit treated the MVD's refusal to renew as a *de facto* suspension and agreed with the plaintiff that under provisions of the Nonresident Violator Compact, she was entitled to notice and a hearing at a meaningful time on the suspension. Id. at 864. It was undisputed that Denny was not afforded an opportunity to challenge the suspension of her license.

Even with that as a background, the Tenth Circuit determined that there was no due process violation because Denny's grounds for challenging the suspension were beyond the scope of the procedures afforded by the Compact, "[I]n the context of a license suspension action under the Nonresident Violator Compact, . . . the scope of hearing is quite limited." Id. at 865.

The Circuit held that, "the right to a hearing in the driver's home state does not include a right to litigate the issue of guilt as to the underlying traffic offense charged in the other state." Id. Rather, the motorist may only challenge the suspension of the license under the Compact by showing that he or she "is not the person to whom the citation was issued, or that the citation has been resolved." Id. (*citing* Davidson v. Colo. Dept. of Rev., 981 P.2d 696, 698 (Colo. App. 1999).

The Tenth Circuit concluded that the basis of Denny's challenge was neither of those grounds, and, therefore, she had not proffered a "cognizable legal basis for challenging the *de facto* suspension of her driver's license," and, consequently, "any deficiencies in [the New Mexico Procedures] . . . caused her no injury because there was nothing for a hearing to decide." Id. at 866 (*quoting* Rector v. City & County of Denver, 348 F.3d 935, 945 (10th Cir. 2003)).

This case is strikingly similar to Denny. It is undisputed that Wauford had notice and a right to a hearing in Ohio to challenge the validity of the citation or the officer's conduct. He chose not to appear. When he learned that his license was suspended in New Mexico, he wanted a hearing, but the basis of his request was to challenge the stop for alleged racial profiling and assertions that he was not guilty of the offense. If Wauford believed that he was the victim of racial profiling, or

10

if he otherwise believed the citation was inappropriate as a result of some other substantive or procedural defect, he could have requested a hearing in Ohio where the burden of proof would have been on the law enforcement officer to demonstrate Wauford's violation of law. Thus, Wauford was afforded full procedural rights of notice and an opportunity to be heard in the State of Ohio. For whatever reason, he chose to neither contest the citation nor to pay it. Instead, he simply returned at some later date to his home state of New Mexico.

Any hearing in New Mexico on the suspension of his license would have been limited in scope to the question of whether it was Wauford who was stopped in Ohio and whether the citation, in fact, was paid. Denny, 234 F. App'x at 865. Importantly, Wauford does not claim he was not the individual cited. To the contrary, he admits that he was stopped in Ohio for a traffic citation. [Doc. 1.] Nor does Wauford represent that he paid the citation and, through some administrative foul up, his license was suspended notwithstanding his payment. It is clear he has not made payment and he taunts Ohio with "If you want me, come and get me." [Doc. 2, Ex, D.]

The Circuit's analysis in Denny is sound, and while Denny is not controlling law because it is unpublished, it is clear that both parties have cited this authority, which the Court finds persuasive. Wauford could not have used a hearing in New Mexico to challenge the underlying citation, although Wauford had the right, as Denny did in her case, to return to the issuing jurisdiction and challenge the traffic citation in the appropriate court. This he did not do.

In Denny, the Circuit concluded that the plaintiff suffered no injury as a result of New Mexico's failure to schedule a hearing, and in the absence of injury, she had no standing to assert a claim. "Unless a person asserts some basis for contesting a governmental deprivation of life, liberty or property, he is not injured by defective procedures he has no occasion to invoke." Rector, 348 F.3d at 944-45 (citation omitted).

11

The Court concludes in this case, as the Circuit did in <u>Denny</u>, that Wauford has no standing as he is not in a position to assert any harm caused to him by the State of New Mexico.

In light of the Court's determinations as to Defendants' first three arguments, it does not address the remaining assertion of qualified immunity.

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss and dismisses Wauford's claims and the entire matter with prejudice.

SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge